Madden, Judge,
delivered the opinion of the court;
The plaintiff sues to recover back pay for a period during which she claims to have been wrongfully suspended from work in the United States Post Office in Duluth, Minnesota.
In an earlier phase of this case the Government made a motion for summary judgment, which the court denied, with an opinion. 140 Ct. Cl. 494. That opinion recited the facts alleged in the plaintiff’s petition. The case was referred to a commissioner for trial, and the plaintiff proved, substantially, the facts alleged in her petition.
The Government urges that the plaintiff should not recover because she failed to exhaust her administrative remedies. The plaintiff, at the same time that she was appealing to the Post Office authorities, appealed to the Ninth Civil Service Region of the United States Civil Service Commission, but was advised by the Ninth Region that any appeal rights which she might have were within the Post Office Department. She was also told that any further appeal from the Ninth Region’s decision would have to be made to the Civil *450 Service Commission within 7 days after the receipt of the Ninth Region’s decision.
Some months before the plaintiff received this advice from the Civil Service Commission’s Ninth Region, her appeal within the Post Office Department had borne fruit, and she had been put back to work. Her failure to appeal her case, which had been rendered moot by her reinstatement, to the Civil Service Commission, does not prejudice her right to recover back pay.
The plaintiff had the status, throughout the entire period covered by this suit, of an “indefinite substitute clerk.” That meant that she was not entitled to steady employment, but she had to hold herself in readiness to work if a substitute was needed and she was called. It would have been impracticable for her to have taken other employment without forfeiting or at least endangering her status. The only period for which plaintiff was even conditionally advised that there would be no work for her was a period of one month, January 26 through February 28, 1953. Even for that period, the notice only said that there would be no work for her “unless there was extended sick or annual leave of one of the stenographers.”
The plaintiff frequently applied to her Post Office for work but was advised that no typing or stenography work was available. She had a right, as the Post Office ultimately decided, to any kind of work, and she so insisted in her requests for work. She made her protests to every Government agency that she thought might help her, and finally succeeded in getting the work to which her status entitled her. There was no time during which she could reasonably have been expected to seek or accept outside employment.
The Government urges that the plaintiff would not have been able to handle all the different kinds of work which was done by the male substitute clerks with less seniority, during the period when the plaintiff was given no work. There was handling of mail bags, loading and unloading trucks, handling and distributing parcels, and, occasionally, working as mail carriers. We think that the Government’s contention is well-founded, and that the most dependable way to compute the number of hours of work which the plaintiff lost is to *451 take, as a measure, the average number of hours per day that she actually worked during the six-month period before she was suspended.
According to this measure, the plaintiff lost pay in the amount of $3,688.53 during her suspension, and judgment in that amount will be entered in her favor.
It is so ordered.
Durfee, Judge; LaeamoRe, Judge; Whttakee, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Currell Vance, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a resident of Duluth, Minnesota, is a married woman, with veteran’s preference, who had completed a trial or probationary period of Federal service prior to the pertinent time in suit. Plaintiff’s claim is for back pay for periods during which she was not called to work while employed by the Duluth post office as an indefinite substitute clerk.
2. In September 1952, while working as a full-time employee at the St. Paul, Minnesota post office, as an indefinite substitute clerk with stenographic qualifications, plaintiff applied for a job at the Duluth post office, since her husband had then secured employment in Duluth. At that time plaintiff preferred, if possible, to obtain work for about 6 hours per day rather than full time, in order to enable her to get her daughter ready for school before reporting for work.
3. The Duluth post office was desirous of obtaining the services of a stenographer during this period, primarily to catch up on the typing of new distribution schemes of that office. A bulletin of this position was posted for Duluth post office employees to bid on, if they desired this job and were qualified. This notice, posted at Duluth on September 17,1952, reads as follows:
Part time stenographic assistance will be needed in the office in the immediate future. Any classified employee, who feels he is qualified, may contact the postmaster, or assistant, on or before September 26th. Knowledge of *452 both shorthand and typing are required. Duties will consist of replacement for absences of the two regular stenographers assigned to the post office and inspection service, and other stenographic duties as needed.
Apparently none of the regular postal employees at Duluth was interested in this position, and plaintiff was accepted for the position effective September 27, 1952, after resignation from the St. Paul post office on September 26, 1952.
4. Plaintiff received an appointment as an indefinite substitute clerk in lieu of reinstatement, the same as she held previously in St. Paul, because of the restrictions of the Whitten Amendment. This appointment was not considered as a classified or career status appointment by the Post Office Department. Plaintiff remained as an indefinite substitute clerk throughout the entire period pertinent to this suit. The notice of personnel action in this matter contained the following remarks:
Resigned St. Paul Post Office CE9/26/52. Above appointment without a break in service for “Stenographic Duties” at this Post Office.
Retirement status originally restored 12/1/51 due to prior classified service at St. Paul Post Office 4/1/42 to 7/15/49. Appointment made in grade 7, employee in this grade at time of separation 9/26/52, agreeable to applicant.
Plaintiff’s service and pay record carried the notation “Steno duties only.”
5. From September 27, 1952, through January 23, 1953, plaintiff was assigned typing duties in the Duluth post office. During this period of 119 days the plaintiff worked 504 hours.
In January 1953, the post office caught up with its typing-work, and on January 20, 1953, plaintiff received written notice from the assistant postmaster that there would be no further work for her for the period from January 26, 1953, through February 28, 1953, unless there was extended sick or annual leave of one of the stenographers. On February 1, 1958, plaintiff was placed in an “available status” by the Duluth post office. At this time plaintiff would have accepted either full time or part time work. She conveyed this *453 desire to postal officials at Duluth periodically thereafter until she was reemployed.
6. After January 23,1953, plaintiff was not called to work until the Christmas season, when she worked from December 6, 1953, to December 23, 1953. At that time plaintiff was used at a money order window as the regular money order clerk was hospitalized at that time, or had been temporarily transferred to mail distribution for the Christmas rush. No experience was required for the work at the money order window.
7. Subsequent to January 24, 1953, plaintiff’s periodic requests for employment were turned down by the Duluth postmaster and his assistant, who advised plaintiff that no typing or stenography work was available. Defendant concedes that in December 1953, and again in February 1954, plaintiff requested any type of employment, including other than stenographic work. She was told on these occasions that she liad been hired for stenographic work entirely and that the post office would not employ her for other duties.
8. After plaintiff’s request for any type of work had been denied, plaintiff protested to officials of the Post Office Department, the Department of Labor Bureau of Veterans’ Reemployment Rights, the Ninth Civil Service Region, and the National Federation of Post Office Clerks. On March 3, 1954, plaintiff wrote the Assistant Postmaster General, Bureau of Personnel, requesting clarification of her status. On March 31,1954, the Assistant Postmaster General, Bureau of Personnel, wrote the following letter to the Duluth postmaster:
Upon re-appointment in your office as indefinite sub-clerk in lieu of re-instatement, effective Sept. 27, 1952, Mrs. Zaverl began a new period of seniority. Please advise if you are in position to arrange for more hours of employment for Mrs. Zaverl consistent with her seniority on work she is capable of performing.
On April 7,1954, the postmaster responded:
Reference is made to your letter of March 31, initialed SP3-DS.
At present we do not have any stenographic duties for Mrs. Zaverl, and unless something unforeseen at this writing should take place, we do not see any such duties available for some time.
*454 On April 15, 1954, the Assistant Postmaster General wrote the postmaster as follows:
This will acknowledge your letter of April 7, 1954, concerning the assignment of indefinite-sub-clerk Shirley Zaverl.
You are not required to confine Mrs. Zaverl’s duties to stenographic work. She is entitled to be employed on any work which is available and which she is capable of performing, consistent with her seniority.
Your further comments will be appreciated.
On April 23,1954, the postmaster wrote plaintiff as follows:
You are scheduled for the Outgoing Mails Section from 5:00 to 7:00 P.M. next week Monday through Friday, April 26 to 30th. On Saturday, May 1st, you are scheduled from 11:00 A.M. to 5:00 P.M. in the same section.
Please contact Mr. Burud, Assistant Superintendent of Mails, Incoming Section for your first scheme assignment.
Additional duties in the Division of Mails will be assigned to you as you gain experience. Your future assignments will be attached to your card in the clock room each week and, in addition, you are of course subject to verbal additions and deletions as the mail fluctuates.
On April 26,1954, the postmaster advised the Assistant Postmaster General as follows:
Reference is made to your letter of April 15, initialed SP3 :DS :RR.
Indefinite sub-clerk Shirley Zaverl has been assigned to duties in the Division of Mails effective today.
9. After a series of correspondence with the branch office of the Ninth Civil Service Region, and after an investigation of plaintiff’s appeal by the Civil Service Commission, plaintiff received, on August 4,1954, the following decision on her appeal:
According to your statement, when you were placed in a “lay-off status” there were thirteen postal clerks with less seniority than you who worked during the periods of time in question. You also stated that you were not recalled to duty because the local postal clerks union had lodged a protest against your employment.
*455 A substitute clerk is not guaranteed any specific amount of work but is subject to call by the postmaster or other postal official acting on his behalf. The Post Office Department has established a seniority system for substitute clerks. The Civil Service Commission does not control assignments of substitute clerks nor does the Commission control the seniority system. The system is regulated and controlled by the Post Office Department. If the Post Office Department violates its own regulations or policies, the employee concerned has a grievance against his Department rather than an appeal to the Civil Service Commission.
After a careful consideration of all the evidence in your case, we find that the failure of the Post Office Department to recall you to duty during the periods of time in question did not amount to a suspension or furlough without pay within the meaning of Section 14 of the Veterans’ Preference Act of 1944, as amended. Therefore, the procedural requirements of Section 14 of the above named Act do not apply. Since your appeal does not come within the purview of Section 14, the Commission would not have authority to conduct a hearing in your case. Any appeal rights that you might have are with the Post Office Department.
No further appeal from this decision will be entertained from either you or the Post Office Department unless it is submitted to the Commissioners, U.S. Civil Service Commission, Washington 25, D.C., within seven (7) days after receipt of this decision. Notification of a further appeal should be given to this office so the case files can be transmitted promptly to the Commissioners. Additional representations should be made in writing and submitted in duplicate with the appeal to the Commissioners.
Plaintiff thereafter made no further appeal to the Civil Service Commission but on April 19, 1956, plaintiff made a claim for back pay for the periods covered in the instant suit, directly to the Post Office Department. This claim was denied by postal authorities on October 9, 1956. Plaintiff filed her petition in this court on January 14, 1957.
10. During the periods from January 24, 1953, to December 6, 1953, and December 24, 1953, to April 26, 1954, 13 non-classified substitute clerks with indefinite or temporary appointments, and with less length of service than plaintiff were called on occasion by postal authorities at Duluth for *456 work, whereas plaintiff was not called to work at any time during this period.
11. All substitute clerks junior to plaintiff in the Duluth post office were men. There were no separate male and female rosters for substitute clerks during the period pertinent to this suit, and plaintiff was the only woman substitute clerk in the Duluth post office during this period.
A portion of the work performed by all of these male substitute clerks entailed physical labor and heavy work, such as handling mail bags, loading and unloading trucks, handling and distributing parcels, and occasionally working as carriers, work for which a woman normally would not be qualified. That portion of the work which plaintiff could not reasonably perform was not ascertainable from the evidence.
12. Upon recall to duty on April 26, 1954, plaintiff was assigned duties other than those entailing physical labor normally only performed by the male substitute clerks.
13. The Post Office Department regulations pertinent to this issue, as shown in chapter II of the 1952 edition of the Post Office manual are as follows:

Appointments to Fill Regular Vacancies

13. A vacancy in the regular force shall be filled by the promotion of the senior classified substitute of the same designation or by reinstatement or by transfer.
14. Relative standing on the substitute roll. — Substitutes are placed on the roll in the order of the dates of their appointments from a competitive register. * * * Separate substitute rolls are maintained for males and females.

Appointment of Temporary Employees

17. Postmasters are expected to organize their post offices with a view to having the prescribed quota of classified substitutes perform the necessary substitute service. Temporary substitutes must not be used for any reason if classified substitutes are available. However, for vacation and holiday periods and other emergencies, temporary substitutes may be appointed.
REMOVALS AND REDUCTIONS

Provision of Law

66. No person in the classified civil service of the United States shall be removed therefrom except for *457 such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation. * * *
LETTERS OE CHARGES

General

67. In all cases where the facts justify a recommendation for removal from the service, reduction in grade, suspension, or other disciplinary action with respect to any employee who has completed a probationary or trial period, charges shall be preferred in writing. (It is not required that charges be preferred for the separation of a temporary employee, or for a classified employee serving a probationary or trial period.) The letter of charges must be complete and in full justification of the recommendation. * * *
PROMOTIONS

Annual Grade Increases

14:6 ^ ^
If a substitute is excused or furloughed for as much as 90 days during the year, that fact should be considered in fixing the date of his annual grade increase. A substitute who is not employed for an extended period on account of lack of work, should be placed on furlough; otherwise he will be considered as available for duty and eligible for an annual grade increase.
ASSIGNMENTS

General

158. All newly appointed clerks under the jurisdiction of the Bureau of Post Office Operations are first to be assigned to the Mailing Division, and the assignments from that division to what may be considered as preferred clerical positions should be based on seniority and fitness for the position. At post offices where night work is required, a substitute appointed to the position of regular clerk shall be assigned to a night tour until *458 by reason, of seniority be becomes eligible for a vacancy occurring on a preferred tour.
Substitute clerks at first-class offices must not be assigned to any position involving financial responsibility, except in an emergency or where it would be impracticable to do otherwise.
Insofar as practicable, the auxiliary work, both clerk and carrier, should be pooled and divided equally among the classified substitutes.
However, when the available substitute hours are limited and an equalization would work a hardship on the substitutes already employed, the person selected as a newly appointed substitute should be given to understand that the additional place involved covers more or less temporary assistance and that he will not share in the substitute work unless the present substitutes are being employed 40 hours or more each week.
SENIORITY

General

164. The Department recognizes seniority in the matter of assignment wherever the senior employee is qualified for the position to be filled. The senior employee should not be passed over and a junior one selected unless there is ample reason to believe that the senior one is not qualified for the position to be filled. It is not a question of selecting the most efficient employee but of selecting the senior employee who meets the requirements. Care should be exercised not to confuse lack of opportunity with lack of ability.
Postmasters should not reorganize details and tours merely to conform with seniority readjustments. Existing arrangements of details and tours should continue until such time as reassignments are made necessary by vacancies or in the interest of the service.

Employees TJnder Jurisdiction of Bureau of Post Office Operations

165. Original appointment. — Seniority commences with the date of appointment to a classified substitute or regular position m a post office, including the benefits prescribed for certain employees in article 145 of this chapter, and is not affected by the amount of substitute service performed or other conditions except as herein stated. Appointment as a temporary employee is not recognized in this connection.
167. Transferred employees. — (a) When an employee is transferred at his own request from one post office to *459 another, from another branch or department, or between positions in a post office, except as provided in paragraphs (c) and (d) of this article and article 168, he commences a new period of seniority in the position to which transferred and does not regain seniority for service prior to transfer. A person who transfers to the substitute roll from another position within the Postal Service shall, because of previous postal experience, be placed ahead of the substitutes appointed from the civil-service register effective the same date. * * *
employees’ hours oe service

Classified /Substitutes

172. Classified substitute employees who report for duty at any post office or other postal unit in compliance with an official order shall be employed not less than 2 hours following the hour they are ordered to report.
The period following recess for meals does not constitute another period of employment to the extent that the substitutes must be paid for not less than 2 hours. For example, a substitute is ordered to report at 8 a.m. and works from that hour until 12 noon. He then reports again that same day at 1 p.m. for an hour’s work. The service rendered from 1 p.m. to 2 p.m. is not another tour to the extent he must be employed for 2 hours.
Any service rendered following a recess or swing in excess of 2 hours at mealtime will be regarded as a separate and distinct period of employment for which the substitute should be employed for not less than 2 hours.
The foregoing instructions apply to classified employees. only and are not applicable to temporary or unclassified employees. * * *

Damages

14. The plaintiff’s base rate of pay was $1,965 per hour during 1953. She was given a raise to $2,015, effective J anuary 1,1954.
During the six-month period prior to her suspension,, the plaintiff worked 504 hours on 119 days. At the rate of 504 hours for each 119 days of the total period of 439 days of her suspension, plaintiff would have worked 1,864.8 hours (439/119=3.7; 504X 3.7=1864.8). Multiplying those 1864.8 hours by her hourly rate of pay, $1,965, she would have earned $3664.33 if she continued to work the same number *460 of hours. Since she received a raise to $2,015 per hour on January 1,1954, the total earnings must be raised by $24.20 (115/119=.96; .96X504=484; 484X .05=24.20) to yield $3688.53.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and it is therefore adjudged and ordered that she recover of and from the United States three thousand six hundred eighty-eight dollars and fifty-three cents ($3,688.53).